UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION
CASE NO. _____

WILLIAM MCINTOSH,

   Plaintiff,

v.

AMENTUM SERVICES, INC.,

   Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, WILLIAM MCINTOSH ("Plaintiff"), by and through the undersigned counsel, hereby sues Defendant, AMENTUM SERVICES, INC. ("Defendant"), and in support states as follows:

## GENERAL ALLEGATIONS

1. This action is brought pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981, to redress injuries suffered by Plaintiff as a result of Defendant's unlawful discrimination, retaliation, and creation of a hostile work environment based on Plaintiff's race, color, and religion.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as the federal claims over which this Court has original jurisdiction.

1

4.      Plaintiff was employed by Defendant at a facility located in Escambia County, Florida, within this judicial district.

5.      Venue is proper in the Northern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this District, and Defendant conducts business within this District.

6.      Defendant is an "employer" within the meaning of the Florida Civil Rights Act, Fla. Stat. § 760.02, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), in that it employed fifteen (15) or more employees for each working day in each of twenty or more calendar weeks during the relevant period.

7.      At all times material hereto, Plaintiff was an "employee" within the meaning of the Florida Civil Rights Act and applicable federal statutes.

8.      Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2025-09586, which was dually filed with the Florida Commission on Human Relations ("FCHR").

9.      Plaintiff received a Notice of Right to Sue from the EEOC and timely files this action.

10.     All conditions precedent for the filing of this action have been satisfied, including the exhaustion of all pertinent administrative procedures and remedies.

11.     Declaratory, injunctive, legal, and equitable relief is sought pursuant to the laws set forth above, together with attorneys' fees, costs, and damages.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

12.     Defendant contracted with GE Vernova to provide facilities management and janitorial services at GE Vernova's manufacturing facility in Pensacola, Florida. On or about November 27, 2023, Defendant hired Plaintiff as a Janitor II at the GE Vernova Pensacola facility.

13.     Plaintiff performed cleaning duties throughout the facility and utilized an electronic timekeeping system, including ADP and Costpoint, to track work hours.

14.     From the outset of employment, Plaintiff was paid $17.00 per hour while other janitors performing the same work were paid approximately $18.00 per hour.

15.     Before Plaintiff's hire, Defendant communicated through text messages that Plaintiff would be paid $18.00 per hour. Defendant hired Plaintiff at the lower rate of $17.00 per hour without explanation.

16.     Plaintiff repeatedly requested increased pay and advancement opportunities from his supervisor, Deno Porter. Porter ignored these requests.

17.     Despite Plaintiff's seniority and his background in electrical work, Defendant hired David Lee Russell, a white male with no relevant maintenance experience, and placed Russell into a maintenance position. Plaintiff, who had expressed interest in advancement and possessed qualifications superior to Russell's for the maintenance role, was never considered.

18.     Plaintiff is a Black man who practices the Kemetic belief system, a spiritual tradition rooted in the religious practices of ancient Egypt that encompasses, among other tenets, reverence for African ancestors and cultural heritage. As part of his religious practice, Plaintiff regularly wears an Ankh, a symbol of life central to Kemetic belief. On at least one occasion, Plaintiff wore a Dashiki, traditional African religious and cultural attire, in observance of his faith.

19.     Plaintiff's supervisor, Deno Porter, treated Plaintiff differently than other janitors at the facility.

20.     Porter looked at Plaintiff in a negative and unusual manner, particularly when Plaintiff wore religious attire or symbols associated with his Kemetic faith.

21.     Plaintiff was written up on multiple occasions for using paid time off ("PTO") that he was entitled to use.

22.     On one occasion, Porter accessed Plaintiff's profile in the timekeeping system and entered a PTO day without Plaintiff's knowledge or authorization, in an effort to manufacture a basis for disciplinary action.

23.     On or about June 18, 2024, Plaintiff requested PTO for June 19, 2024, Juneteenth, which Plaintiff observes as part of his Kemetic practice of ancestral reverence and recognition of the African American freedom experience. Porter denied the request.

24.     On June 19, 2024, Plaintiff reported to work wearing a Dashiki and his usual Ankh in observance of his religious beliefs.

25.     After observing Plaintiff's religious attire, Porter assigned Plaintiff an unusual task that Plaintiff had never previously performed.

26.     Plaintiff completed the assigned task. Porter nonetheless claimed that Plaintiff's performance was inadequate and initiated disciplinary action.

27.     On or about June 20, 2024, following a confrontation over the assigned tasks and Plaintiff's objections to his treatment, Defendant suspended Plaintiff. Porter called security during the encounter.

28.     In or around August 2024, Plaintiff applied for unemployment benefits, having been informed of his separation.

4

29.     Shortly thereafter, Defendant contacted Plaintiff and stated that he had not been terminated but was instead on suspension, and that he would be returned to work with back pay.

30.     Defendant returned Plaintiff to work on or about August 12, 2024, and issued a back pay amount that did not accurately reflect the wages Plaintiff would have earned during the approximately seven weeks he was out of work.

31.     Plaintiff's reinstatement had the practical effect of preventing him from receiving unemployment benefits to which he would otherwise have been entitled.

32.     Following reinstatement, Porter resumed subjecting Plaintiff to heightened scrutiny and disciplinary actions.

33.     On August 13, 2024, Plaintiff filed an internal complaint with Defendant, alleging that Porter was targeting him because of his religion. This complaint constituted protected activity under Title VII and the Florida Civil Rights Act.

34.     Defendant's Director of Human Resources, Jennifer Chancellor, conducted an investigation into Plaintiff's complaint. Defendant found the complaint "unsubstantiated," concluding only that Plaintiff had been disciplined for "verified attendance and performance issues."

35.     Despite Plaintiff's complaint, Defendant took no remedial measures to address Plaintiff's concerns about religious targeting. Porter continued to supervise Plaintiff and continued the same pattern of conduct.

36.     After Plaintiff's internal complaint, Defendant accused Plaintiff of taking excessive breaks despite Plaintiff's adherence to the break policy permitting two (2) fifteen (15) minute rest breaks and one (1) thirty (30) minute meal break per shift.

37.     The GE Vernova facility maintained a site-specific policy requiring employees to remain within the badged area during their fifteen-minute rest breaks, while permitting employees to leave the facility only during the thirty-minute meal break. Defendant disciplined Plaintiff for leaving the badged area during rest breaks.

38.     Defendant enforced the site break policy against Plaintiff with a rigor and scrutiny that was not applied to other employees at the facility. The heightened enforcement of this policy against Plaintiff intensified after his August 13, 2024 internal complaint of religious discrimination.

39.     Plaintiff maintained records demonstrating that his breaks, including their duration, were within the time limits permitted by policy.

40.     Despite Plaintiff's compliance with the break time limits, Defendant issued additional write-ups related to Plaintiff's break activity.

41.     On or about October 8, 2024, Defendant terminated Plaintiff's employment for the second time, stating the reason as "taking breaks." The termination occurred less than two months after Plaintiff's internal complaint of religious discrimination.

42.     Throughout Plaintiff's employment, Porter engaged in conduct suggesting an intent to force Plaintiff to resign, including asking Plaintiff, "You still not going to quit?"

43.     Plaintiff was subjected to disparate treatment, discriminatory discipline, and termination based on his race, color, and religion.

44.     Plaintiff engaged in protected activity by asserting his rights under Title VII and the Florida Civil Rights Act, including requesting fair pay, objecting to discriminatory treatment, requesting religious accommodations, and filing an internal complaint of religious discrimination on August 13, 2024.

45. As a result of Defendant's actions, Plaintiff suffered loss of wages, emotional distress, and other damages.

46. Defendant's conduct constitutes unlawful discrimination and retaliation based on Plaintiff's race, color, and religion.

47. Throughout his employment, Plaintiff performed his job duties and responsibilities at a satisfactory or above-satisfactory level.

48. Any reason provided by Defendant for Plaintiff's discipline or termination is a pretext for unlawful discrimination and retaliation.

49. The acts of discrimination and harassment described above constitute a continuing violation. At least one act occurred within the applicable filing period, and the earlier acts are part of the same unlawful employment practice.

50. Plaintiff has retained the undersigned counsel to protect his rights and interests and is obligated to pay reasonable attorneys' fees.

## COUNT I
### Race and Color Discrimination in Violation of the Florida Civil Rights Act

51. Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

52. The Florida Civil Rights Act, Fla. Stat. § 760.10, prohibits an employer from discharging or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's race or color.

53. Plaintiff possessed the requisite qualifications and skills to perform his position.

54. Plaintiff was subjected to disparate treatment in that similarly situated non-Black employees were afforded opportunities not given to Plaintiff because of his race and color, including advancement to higher-paying positions.

7

55.    As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered economic harm, including lost wages and benefits, and other associated losses.

56.    As a further result of Defendant's unlawful conduct, Plaintiff has been compelled to file this action and has incurred the costs of litigation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant, find that Defendant violated the Florida Civil Rights Act, and order the following relief:

(a) Award Plaintiff actual damages, including back pay, front pay, and lost benefits;

(b) Award Plaintiff prejudgment interest;

(c) Award Plaintiff compensatory damages for emotional distress;

(d) Award punitive damages as permitted by law;

(e) Award Plaintiff attorneys' fees and costs of litigation; and

(f) Grant such other and further relief as this Court deems just and proper.

## COUNT II
**Religious Discrimination in Violation of the Florida Civil Rights Act**

57.    Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

58.    Plaintiff is a member of a protected class under the Florida Civil Rights Act by virtue of his religious beliefs and practices.

59.    Defendant discriminated against Plaintiff because of his religion, including by subjecting Plaintiff to disparate treatment, unwarranted discipline, denial of religious observance, and termination connected to the expression of his religious beliefs.

8

60.     Plaintiff would not have been subjected to this treatment but for the fact that he practices the Kemetic belief system.

61.     Defendant's conduct was willful and in reckless disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of religion was unlawful.

62.     Defendant retained supervisory employees who exhibited discriminatory conduct toward Plaintiff and took no remedial action despite Plaintiff's internal complaint.

63.     As a result, Plaintiff has been deprived of rights, exposed to ridicule, and has suffered emotional distress and damage.

64.     Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages unless and until this Court grants relief.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Declare that Defendant's acts violated the Florida Civil Rights Act;

(b) Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

(c) Award Plaintiff back pay, front pay, lost benefits, and prejudgment interest;

(d) Award punitive damages as permitted by law;

(e) Award Plaintiff attorneys' fees and costs; and

(f) Grant such other and further relief as the Court deems just and proper.

## COUNT III
### Retaliation in Violation of the Florida Civil Rights Act

65.    Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

66.    Plaintiff engaged in protected activity under the Florida Civil Rights Act, including complaining about discrimination, requesting religious accommodations, objecting to unequal pay and disparate treatment, and filing an internal complaint of religious discrimination on August 13, 2024.

67.    Shortly after Plaintiff engaged in protected activity, Defendant subjected him to materially adverse employment actions, including heightened scrutiny, unwarranted discipline, suspension, and termination. Plaintiff was terminated on October 8, 2024, less than two months after his internal complaint.

68.    There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions, as demonstrated by the temporal proximity between Plaintiff's August 13, 2024 complaint and the escalating discipline and ultimate termination that followed.

69.    As a direct and proximate result of the foregoing unlawful acts, Plaintiff has suffered mental anguish, emotional distress, lost wages, lost benefits, humiliation, and damage to reputation.

70.    These damages are continuing and permanent.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Declare that Defendant's acts violated the Florida Civil Rights Act;

(b) Award Plaintiff compensatory damages for emotional distress;

(c) Award Plaintiff back pay, front pay, lost benefits, and prejudgment interest;

(d) Award Plaintiff attorneys' fees and costs; and

(e) Grant such other and further relief as the Court deems just and proper.

## COUNT IV
**Hostile Work Environment in Violation of the Florida Civil Rights Act**

71.     Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

72.     Plaintiff is a Black male who practices the Kemetic religion and is a member of a protected class under the Florida Civil Rights Act.

73.     During his employment with Defendant, Plaintiff was subjected to unwelcome conduct based on his race, color, and religion, including derogatory looks when wearing religious attire, denial of religious observance, retaliatory discipline for exercising his rights, assignment of unusual tasks designed to manufacture a basis for termination, manipulation of his PTO records, and comments suggesting an intent to force his resignation.

74.     The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. The conduct was not limited to isolated incidents but occurred repeatedly throughout Plaintiff's tenure.

75.     Defendant is liable for this conduct because Plaintiff's supervisor, Porter, was the primary source of the harassment and possessed the authority to affect the terms and conditions of Plaintiff's employment. Defendant took no remedial action despite Plaintiff's August 13, 2024 internal complaint.

76.     The discriminatory and harassing acts described herein constitute a continuing violation. At least one act of harassment occurred within the applicable limitations period, and the earlier acts are part of the same unlawful employment practice.

11

77.    As a direct and proximate result of the foregoing, Plaintiff has suffered mental anguish, emotional distress, lost wages, lost benefits, humiliation, and damage to reputation.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Declare that Defendant's acts violated the Florida Civil Rights Act;

(b) Award Plaintiff compensatory damages for emotional distress;

(c) Award Plaintiff back pay, front pay, lost benefits, and prejudgment interest;

(d) Award Plaintiff attorneys' fees and costs; and

(e) Grant such other and further relief as the Court deems just and proper.

## COUNT V
### Race Discrimination in Violation of 42 U.S.C. § 1981

78.    Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

79.    Plaintiff is a Black male and a member of a protected class within the meaning of 42 U.S.C. § 1981.

80.    At all relevant times, Plaintiff had a contractual employment relationship with Defendant.

81.    Defendant, through the conduct described above, intentionally discriminated against Plaintiff in the making, performance, modification, and termination of his employment contract because of his race.

82.    Defendant's conduct was willful, wanton, and intentional, and taken with malice or reckless indifference to Plaintiff's rights, entitling Plaintiff to compensatory and punitive damages.

83.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages unless and until this Court grants relief.

84.      Plaintiff has retained the undersigned counsel, who is entitled to attorneys' fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

(a) Adjudge and decree that Defendant violated 42 U.S.C. § 1981;

(b) Award Plaintiff back pay, benefits, and prejudgment interest;

(c) Award Plaintiff compensatory damages for mental anguish and loss of enjoyment of life;

(d) Award punitive damages;

(e) Reinstate Plaintiff or, in lieu of reinstatement, award front pay;

(f) Award Plaintiff attorneys' fees and costs; and

(g) Grant such additional relief as the Court deems just and proper.

### COUNT VI
### Retaliation in Violation of 42 U.S.C. § 1981

85.      Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

86.      Plaintiff engaged in protected activity under 42 U.S.C. § 1981 by opposing race discrimination and asserting his contractual employment rights.

87.      Defendant retaliated against Plaintiff for exercising rights protected under 42 U.S.C. § 1981.

88.      Defendant's retaliatory actions, including heightened scrutiny, unwarranted discipline, and termination, would not have occurred but for Plaintiff's protected activity.

89.      Plaintiff's race and color were motivating factors in Defendant's adverse employment actions.

90.     Defendant's conduct was willful, wanton, and intentional, and taken with malice or reckless indifference to Plaintiff's rights.

91.     Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages unless and until this Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

(a) Adjudge and decree that Defendant violated 42 U.S.C. § 1981;

(b) Award Plaintiff back pay, benefits, and prejudgment interest;

(c) Award Plaintiff compensatory damages;

(d) Award punitive damages;

(e) Award Plaintiff attorneys' fees and costs; and

(f) Grant such additional relief as the Court deems just and proper.

## COUNT VII
### Race and Color Discrimination in Violation of Title VII of the Civil Rights Act of 1964

92.     Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

93.     Plaintiff's race and color were motivating factors in Defendant's adverse employment actions against Plaintiff, including reduction in pay, denial of advancement, unwarranted discipline, and termination.

94.     Defendant's stated reasons for its adverse actions against Plaintiff are pretextual, asserted to conceal the discriminatory nature of its conduct.

95.     Even if Defendant could articulate legitimate reasons for its actions, Plaintiff's race was a motivating factor in Defendant's adverse conduct toward Plaintiff and Plaintiff's termination.

96.    As a result, Plaintiff has experienced and will continue to experience significant economic loss in the form of lost wages and lost benefits, as well as emotional anguish, pain, suffering, and loss of dignity.

97.    Plaintiff seeks attorneys' fees and costs as permitted by 42 U.S.C. § 2000e-5(k).

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Declare that Defendant's acts violated Title VII;

(b) Award Plaintiff compensatory damages for emotional distress;

(c) Award Plaintiff back pay, front pay, lost benefits, and prejudgment interest;

(d) Award punitive damages;

(e) Award Plaintiff attorneys' fees and costs; and

(f) Grant such other and further relief as the Court deems just and proper.

## COUNT VIII
### Religious Discrimination in Violation of Title VII of the Civil Rights Act of 1964

98.    Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

99.    Plaintiff's religion was a motivating factor in Defendant's adverse employment actions against Plaintiff, including the denial of Plaintiff's request for religious observance on Juneteenth, the assignment of an unusual task after Plaintiff appeared in religious attire, unwarranted discipline, and termination.

100.    Defendant failed to reasonably accommodate Plaintiff's sincerely held religious beliefs when it denied his request for PTO on June 19, 2024, a day of religious observance.

101.    Defendant subjected Plaintiff to adverse treatment because of his religious practices, including the wearing of an Ankh and a Dashiki, and his observance of Juneteenth as part of his Kemetic faith.

15

102.    Defendant's stated reasons for its actions are pretextual. The true reasons for Defendant's adverse actions were Plaintiff's race, color, and religion.

103.    As a result, Plaintiff has suffered economic loss, emotional distress, and other damages.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Declare that Defendant's acts violated Title VII;

(b) Award Plaintiff compensatory damages for emotional distress;

(c) Award Plaintiff back pay, front pay, lost benefits, and prejudgment interest;

(d) Award punitive damages;

(e) Award Plaintiff attorneys' fees and costs; and

(f) Grant such other and further relief as the Court deems just and proper.

## COUNT IX
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

104.    Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

105.    Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant, including by requesting fair pay, objecting to discriminatory treatment, and filing an internal complaint of religious discrimination on August 13, 2024.

106.    Plaintiff's race, color, and religion were motivating factors in Defendant's adverse employment actions.

107.    There is a causal connection between Plaintiff's protected activity and the adverse employment actions, as demonstrated by the temporal proximity between Plaintiff's August 2024 complaint and his October 2024 termination, and by the pattern of escalating discipline following his complaints.

108. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered mental anguish, emotional distress, lost wages, lost benefits, humiliation, and damage to reputation.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Declare that Defendant's acts violated Title VII;

(b) Award Plaintiff compensatory damages for emotional distress;

(c) Award Plaintiff back pay, front pay, lost benefits, and prejudgment interest;

(d) Award punitive damages;

(e) Award Plaintiff attorneys' fees and costs; and

(f) Grant such other and further relief as the Court deems just and proper.

## COUNT X
### Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964

109. Plaintiff re-adopts and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

110. Plaintiff is a Black male who practices the Kemetic religion and is a member of a protected class under Title VII.

111. During his employment, Defendant subjected Plaintiff to unwelcome harassment based on his race, color, and religion, as described in the factual allegations above.

112. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. The conduct recurred throughout Plaintiff's tenure and was not limited to isolated incidents.

113. Defendant is liable for this conduct because Plaintiff's supervisor was the primary source of the harassment, and Defendant failed to take remedial action despite Plaintiff's August 13, 2024 internal complaint.

17

114.   The harassment constitutes a continuing violation. At least one act occurred within the applicable limitations period, and the earlier acts are part of the same unlawful employment practice.

115.   As a direct and proximate result, Plaintiff has suffered mental anguish, emotional distress, lost wages, lost benefits, humiliation, and damage to reputation.

116.   These damages are continuing and permanent.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Declare that Defendant's acts violated Title VII;

(b) Award Plaintiff compensatory damages for emotional distress;

(c) Award Plaintiff back pay, front pay, lost benefits, and prejudgment interest;

(d) Award punitive damages;

(e) Award Plaintiff attorneys' fees and costs; and

(f) Grant such other and further relief as the Court deems just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 31, 2026

Respectfully submitted,

REMER, GEORGES-PIERRE &
HOOGERWOERD, PLLC
2745 Ponce de Leon Blvd
Coral Gables, Florida 33134
Telephone: (305) 416-5000

By: /s/ Peter M. Hoogerwoerd
PETER M. HOOGERWOERD, ESQ.
pmh@rgph.law
Florida Bar No. 188239